**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

SUSAN PATTEN, as Limited Conservator
for GAVAN CHARLIE BRYANT,

Plaintiff,

v. No. 1:25-cv-01328-JCH-SCY

TARGA RESOURCES LLC;
TARGA NORTHERN DELAWARE, LLC;
WILLIAM PIERCE;
CATERPILLAR, INC.; and
CUSTOM COMPRESSION SYSTEMS, LLC,

Defendants.

**MEMORANDUM OPINION AND ORDER**

This case arises from an alleged incident in which Gavan Charlie Bryant ("Bryant"), while working on the catwalk on the side of a gas compression system at a wellsite, suffered severe injuries when a flash fire broke out due to a gas leak, forcing him to jump and fall 12 feet below. *See* Compl. ¶ 13, Dkt. No. 1-4. On January 30, 2026, Plaintiff Susan Patten, as Limited Conservator for Bryant (hereinafter "Plaintiff") filed a *Motion for Leave to Amend Complaint* (Dkt. No. 17) and *Motion to Remand* (Dkt. No. 18). Defendants Targa Resources LLC ("Targa Resources") and Targa Northern Delaware, LLC ("Targa Northern") (collectively, the "Targa Defendants") oppose both motions. They argue that Plaintiff fraudulently joined Defendant William Pierce ("Pierce") to destroy diversity jurisdiction and that leave to amend is futile because the factual allegations are insufficient to state a claim of individual liability against Pierce. Defendant Custom Compression Systems, LLC ("Custom") joins in the Targa Defendants' opposition to the motions. *See* Notices, Dkt. Nos. 30-31. Having considered the complaint,

proposed amended complaint, motions, briefs, and applicable law, the Court will grant Plaintiff's motion for leave to amend. Considering the additional factual allegations, the Court finds remand is appropriate because Defendants have not shown that there is no possibility that Plaintiff would be able to obtain a judgment against Pierce. Accordingly, this Court, lacking diversity jurisdiction, will grant Plaintiff's motion to remand.

## I. BACKGROUND

### A. Allegations of Complaint

On November 4, 2025, Plaintiff filed a *Complaint for Personal Injuries and Punitive Damages* in the First Judicial District Court, Santa Fe County, New Mexico. Compl., Dkt No. 1-4 at 6 of 34. The following allegations are those contained therein.

On July 11, 2024, Bryant was working for Kodiak Gas Services ("Kodiak") as a mechanic on the Seawolf 1H wellsite in Lea County, New Mexico. *Id.* ¶ 13. The Targa Defendants were the leaseholders and operators of the wellsite. *Id.* Pierce "was the designated company man operating on behalf of" Targa Northern. *Id.* Bryant, who had finished a 12-hour shift, was directed to return to the wellsite to replace a wiring harness and a valve that were damaged by an earlier fire. *Id.* He climbed atop a 12-foot catwalk on the side of a gas compression system. *Id.* While testing the system, a gas leak in a metal-braided hose in the gas compression system caused a flash fire, forcing Bryant to jump off the catwalk. *Id.* He sustained severe burns to his hands, neck, and face, and a traumatic brain injury. *Id.* ¶¶ 13, 17.

The gas compression system had a diesel engine that could be turned on only using a starter. *Id.* ¶ 14. The starter used compressed air to turn the engine's flywheel, initiating the combustion process. *Id.* Caterpillar Inc. ("Caterpillar") and Custom (collectively, the "Product Defendants") designed, manufactured, and/or installed the gas compression system on the Targa Defendants'

premises to utilize pressurized, natural gas instead of compressed air. *Id.* A compressed air system is a safer alternative design. *Id.* ¶ 28. That decision was made jointly by the Targa Defendants and Pierce (collectively, the "Operator Defendants") and the Product Defendants. *Id.* ¶ 14.

Plaintiff, Bryant, and Pierce are residents of New Mexico. *Id.* ¶¶ 1-2, 5. Plaintiff asserts claims for negligence and punitive damages against all Defendants, for premises liability against the Targa Defendants, and for products liability against the Product Defendants. *Id.* ¶¶ 18-35.

**B. Notice of Removal**

The Targa Defendants subsequently filed a Notice of Removal based on diversity jurisdiction. Notice ¶¶ 3-5, Dkt. No. 1. It is undisputed that the amount in controversy exceeds $75,000. *See id.* ¶ 7. The Targa Defendants are both citizens of Delaware and Texas; Caterpillar is a citizen of Delaware and Texas; and Custom is a citizen of Louisiana. *Id.* ¶¶ 9 & n.1. Although the Targa Defendants recognize that Pierce is a New Mexico citizen, they argue he is fraudulently joined, and his citizenship must be disregarded. *See id.* ¶¶ 4, 9.

The Targa Defendants assert that Patten's negligence claim against Pierce has no reasonable basis in New Mexico law because none of the 23 listed acts of negligence are specifically tethered to Pierce or to a particular duty he had to Bryant. *See id.* ¶¶ 11, 29-30. Additionally, they contend that the conclusory factual allegations are insufficient to show that Pierce had the requisite control over the gas compression system to be held liable for negligence under New Mexico law in his independent capacity as an agent. *See id.* ¶ 37. The Targa Defendants refer to the attached Declaration of William Pierce in which he asserts that, in his role as an Operations Manager for Targa Resources (the administrative payroll entity for Targa Northern), he exercises no control over the gas compression system's operation, maintenance, configuration, or design; rather, Kodiak owns, operates, controls, and maintains the gas compression units,

including the compressor, starter, and metal braided hose, pursuant to a master services agreement. *See id.* ¶¶ 38-43; Pierce Decl. ¶¶ 2, 4-5, 9–10, Dkt. No. 1-2.

**C. Motion for Leave to Amend and Proposed Amended Complaint**

Plaintiff filed a motion for leave to allow her to amend the complaint to clarify her claims against Pierce. Pl.'s Mot. to Amend 1, Dkt. No. 17. She seeks to assert more specific factual allegations against Pierce concerning the incident. *See* Proposed Am. Compl. ¶¶ 12-22, Dkt. No. 17-1. As relevant here, Plaintiff's proposed pleading alleges the following.

At the time of the incident, Pierce was the operations manager working for Targa Delaware. *Id.* ¶ 12. Kodiak supplies gas compression systems to companies like Targa. *Id.* ¶ 13. Kodiak's units maintain and regulate the flow and pressure of natural gas so the gas can move through pipelines and other networks. *Id.* Kodiak, which owned the compressor system at issue here, placed it on location several years prior. *Id.* ¶ 14. The Targa Defendants, as the customer, decided to use natural gas rather than compressed air for the starter to the unit to minimize costs and to avoid needing to install additional equipment, such as an air compressor. *Id.* ¶ 16. The Operator Defendants and Product Defendants jointly made this decision, and the Product Defendants installed the gas compression system on the Targa Defendants' premises. *Id.* ¶ 17. The natural gas line installed by the Targa Defendants was the source of the gas leak. *Id.* ¶ 19.

In the weeks and days leading up to the incident, the Targa Defendants and Pierce regularly inspected the property and compression units and oversaw the work onsite. *Id.* ¶ 18. As the operations manager, Pierce oversaw the Seawolf 1H station and was responsible for operational issues there, including the safety and efficiency of the project. *Id.* He served as Kodiak's main point of contact for the Targa Defendants, so all communications regarding the compressors flowed through Pierce. *Id.* He was in frequent communications with Kodiak regarding what work

Kodiak was performing, including which compressors it was working on. *Id.* He often dictated the order of compressors upon which Kodiak worked. *Id.* Pierce was present at the compressor sites where Kodiak was working multiple times each week. *Id.* Pierce knew that the starter unit was powered by the Targa Defendants' natural gas. *Id.*

Although Pierce was not on site at the time of the incident, he coordinated the work remotely and communicated with the Kodiak crew-leads to ensure the work was being performed to the Targa Defendants' satisfaction. *Id.* As the Targa Defendants' representative coordinating the post-fire work on the compressor, Pierce knew or should have known that the line was leaking and posed a danger to workers like Bryant. *Id.*

**D. Motion to Remand**

Plaintiff moved to remand based on a lack of complete diversity among the parties. Pl.'s Mot. to Remand 1, Dkt. No. 18. Plaintiff asserts that the amended complaint contains sufficient allegations of Pierce's control over the compressor and conditions on site to establish that he owed a duty to Bryant that he breached, causing his injuries. *See id.* at 9-11. According to Plaintiff, the allegations of the amended complaint state a claim against Pierce, so the Targa Defendants cannot meet their heavy burden to show fraudulent joinder. *See id.* at 8-15. For their part, the Targa Defendants agree that Pierce is a New Mexico citizen, but they argue there is no possibility Plaintiff can recover against him. Defs.' Resp. 1-2, Dkt. No. 29. In support, they contend that he in fact had no actual control over the gas compression system or the metal braided hose, relying on facts set forth in his Declaration. *Id.*

## II. MOTION TO AMEND COMPLAINT

### A. STANDARD

Generally, a court should freely give leave to amend a complaint when justice so requires. Fed. R. Civ. P. 15(a)(2). Whether to allow amendment of the pleadings is within the discretion of the trial court. *Minter v. Prime Equipment Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006). The purpose of Rule 15 "is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Id.* at 1204 (internal quotations omitted). Leave sought must be freely given in the absence of any justifiable reason for the denial of the motion, such as undue delay, bad faith, repeated failure to cure deficiencies by amendments, undue prejudice, or futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). A court may deny a motion for leave to amend as futile when the proposed amended complaint would be subject to dismissal for any reason. *Bauchman for Bauchman v. West High School*, 132 F.3d 542, 562 (10th Cir. 1997).

**B. ANALYSIS**

In support of her request for leave to amend, Plaintiff asserts that her request is timely, does not raise new theories of recovery, and creates no undue prejudice to any of the Defendants. Rather, she argues that the additional facts establish that Pierce has not been fraudulently joined. The Targa Defendants respond that leave to amend should be denied because the proposed amended complaint fails to address deficiencies regarding fraudulent joinder and fails to state a claim against Pierce. More specifically, they argue amendment is futile because the new allegations do not plausibly allege that Pierce exercised actual control or authority over Kodiak's gas compression system.

Turning to the proposed amended complaint, Plaintiff seeks to add factual allegations, not new causes of action. Both the original complaint and the amended complaint assert a negligence claim against Pierce. The case is in its early stages. The Court will therefore grant Plaintiff's motion to amend the complaint. Accordingly, the Court will consider whether Plaintiff can

establish a cause of action against the non-diverse party, Pierce, based on the factual allegations of the amended complaint. *See Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 35-36 (2025) (explaining that plaintiff controls which claims to bring against which defendants, and when plaintiff amends complaint, case proceeds on amended complaint); *Palmquist v. Hain Celestial Group, Inc.*, 103 F.4th 294, 302-04 (5th Cir. 2024) (permitting plaintiffs to amend pleadings to conform to federal pleading standards by clarifying already averred jurisdictional allegations after removal on diversity grounds for purposes of improper joinder analysis).

## III. MOTION TO REMAND

### A. STANDARD

Federal courts are courts of limited jurisdiction and there is a presumption against removal. *See Dutcher v. Matheson*, 733 F.3d 980, 984-85 (10th Cir. 2013). Removal statutes must be strictly construed with ambiguities resolved in favor of remand. *Fajen v. Foundation Reserve Ins. Co.*, Inc., 683 F.2d 331, 333 (10th Cir. 1982). When jurisdiction is based on diversity, a party must show that there is complete diversity of citizenship between adverse parties and the amount in controversy exceeds $75,000. *Dutcher*, 733 F.3d at 987. "Complete diversity is lacking when any of the plaintiffs has the same residency as even a single defendant." *Id.* A court may disregard the citizenship of a party who was fraudulently joined to defeat federal jurisdiction. *See id.* at 987-88.

To prove fraudulent joinder, the removing party must demonstrate either (1) actual fraud in the plaintiff's pleading of jurisdictional facts, or (2) the inability of the plaintiff to establish a cause of action against the non-diverse party. *Id.* at 988. The removing party bears a heavy burden of proving fraudulent joinder, and all factual and legal issues must be resolved in favor of the non-removing party. *Id.* The removing party must demonstrate that the claim cannot stand with complete certainty, upon undisputed evidence, such that it is subject to summary determination.

*Smoot v. Chicago, R.I. & P.R. Co.*, 378 F.2d 879, 882 (10th Cir. 1967). This standard is more exacting than for a Rule 12(b)(6) dismissal. *Montano v. Allstate Indemnity*, 211 F.3d 1278, 2000 WL 525592, at *2 (10th Cir. Apr. 14, 2000). A court, however, may pierce the pleadings and consider the entire record "upon specific allegations of fraudulent joinder." *Dodd v. Fawcett Publications, Inc.*, 329 F.2d 82, 85 (10th Cir. 1964). "This does not mean that the federal court will pre-try, as a matter of course, doubtful issues of fact to determine removability; the issue must be capable of summary determination and be proven with complete certainty." *Id.*

**B. ANALYSIS**

"New Mexico law recognizes that there exists a duty assigned to all individuals requiring them to act reasonably under the circumstances according to the standard of conduct imposed on them by the circumstances.*"* *Calkins v. Cox Estates*, 1990-NMSC-044, ¶ 11, 110 N.M. 59. An "employer of contractors on a jobsite has a duty of reasonable care to protect persons on the premises from unreasonably dangerous conditions, including employees of those contractors." *Hinger v. Parker & Parsley Petroleum Co.*, 1995-NMCA-069, ¶ 22, 120 N.M. 430. "The extent and nature of the duty is often a function of the degree of control or power retained by the employer over the job." *Id. See also Requarth v. Brophy*, 1990-NMCA-116, ¶ 12, 111 N.M. 51 ("In order to hold an owner liable to an employee of an independent contractor for breach of the duty to provide a safe work place, the employee must show that the owner retained at least some specific control over the premises during the performance of the work, or over the instrumentality that proximately caused employee's injury…. Plaintiff must also show that his injury was proximately caused by the owner's failure to exercise that control in a reasonable manner, that the owner knew or by the exercise of reasonable care should have discovered the dangerous condition, that such hazard involved an unreasonable risk of harm to plaintiff, and the landowner should have expected that

the employee would not discover or realize the danger, or would fail to protect himself against it.”).

As to the duties of employees, an employee can be independently liable to a third person for his own tortious acts committed even while acting in the scope of his employment duties. *See Stinson v. Berry*, 1997-NMCA-076, ¶ 18, 123 N.M. 482. *See also* RESTATEMENT (SECOND) OF AGENCY § 350 (1958) (“An agent is subject to liability if, by his acts, he creates an unreasonable risk of harm to the interests of others protected against negligent invasion.”). RESTATEMENT (SECOND) OF AGENCY § 350. The “liability of an employee or agent for injuries caused by dangerous conditions on occupied premises is directly related to actual control over the premises” or the chattel on the premises. *Klopp v. Wackenhut Corp.*, 1992-NMSC-008, ¶ 23, 113 N.M. 153. The New Mexico Supreme Court quoted with approval the Restatement (Second) of Agency 355:

> An agent who has the custody of land or chattels and who should realize that there is an undue risk that their condition will cause harm to the person, land, or chattels of others is subject to liability for such harm caused during the continuance of his custody, by his failure to use care to take such reasonable precautions as he is authorized to take.

*Id.* (quoting Restatement (Second) of Agency § 355 (1957)). But if an employee or agent “has only a limited control over land or chattels, he is subject to liability only to the extent that he is authorized to exercise such control.” *Id.* (quoting Restatement (Second) of Agency § 355 comment b (1957)).

The question here is whether the Targa Defendants have shown that Plaintiff’s negligence claim against Pierce cannot stand with complete certainty, upon undisputed evidence, such that it is subject to summary determination. Where there are disputes of fact, all factual and legal issues must be resolved in Plaintiff’s favor. *See Oliver v. State Farm Fire and Cas. Co.,* 765 F.Supp.3d

1244, 1251 (W.D. Okla. 2025). Here, the factual allegations in the amended complaint, construed in favor of Plaintiff, indicate Pierce exercised some control over the Seawolf 1H site and the gas compressor: he was the operations manager for the site; he was onsite at the compressor sites where Kodiak was working multiple times per week and he coordinated work remotely; he ensured Kodiak crew leaders performed the work to the Targa Defendants' satisfaction; he frequently communicated with Kodiak regarding its work; he often dictated the order of compressors Kodiak worked on; and all communications related to compressors flowed through him. Moreover, Plaintiff alleged facts that Pierce knew or should have known of the dangerous condition such that he had a duty to protect Bryant: he knew that the starter unit was powered by the Targa Defendants' natural gas, he was coordinating post-fire work on the compressor, and he knew or should have known that the line was leaking and posed a danger to workers.

The Targa Defendants argue that these facts establish, at most, *limited* control over the gas compression unit and the metal braided hose that Plaintiff alleges leaked gas and caused a flash fire. But an employee with limited control may be subject to liability to the extent that he is authorized to exercise such control. *See Klopp*, 1992-NMSC-008, ¶ 23. The allegations in the amended complaint show that Pierce, as the operations manager, coordinated work remotely, oversaw safety issues at the Seawolf 1H station, and should have known of the gas leak and its danger. Am. Compl ¶ 18, Dkt. No. 17-1. The facts alleged indicate that Pierce had some degree of control over the original post-fire work on the compressor that led to Plaintiff's injuries.[1]

The Targa Defendants nevertheless urge the Court to reject Plaintiff's allegations and consider Pierce's Declaration wherein he asserts he was not present on site at the time of the explosion, he does not have authority over Kodiak operations, and the gas compression units are

[1] This degree of control distinguishes the cases relied upon by the Targa Defendants.

owned, operated, controlled, and maintained entirely by Kodiak. Pierce Decl. ¶¶ 4-5, 9, 15, Dkt. No. 1-2. According to Pierce, Kodiak is responsible for starting, stopping, inspecting, and maintaining the gas compression unit, and he does not provide instruction or direction to Kodiak mechanics performing those activities. *Id.* ¶ 7. He further attests that, while he manages the natural gas flowing in and out of the station and communicates with Kodiak regarding the natural gas quality and pressure, he does not perform maintenance or troubleshooting on the gas compression units. *Id.* ¶ 8. According to Pierce, he was not involved in the design, manufacture, or installation of Kodiak's gas compression unit or the metal braided hose or the decision to use natural gas instead of compressed air to start and run the unit. *Id.* ¶ 10. Pierce says he has no authority to repair the gas compressor unit, and he did not direct Bryant to replace the wiring harness or valve. *Id.* ¶¶ 14-15.

Pierce's Declaration confirms, however, that he was the Operations Manager who oversaw the Seawolf 1H station. *See id.* ¶¶ 2-3. He acknowledges that his duties included managing the natural gas flowing in and out of the station and communication with Kodiak regarding the natural gas pressure. *Id.* ¶ 8. Although Kodiak owned, operated, and maintained the gas compression unit on the site, Plaintiff alleges that Pierce regularly inspected the property and was responsible for safety there. The Declaration does not directly refute that assertion. Rather, Pierce acknowledges that at times he meets with Kodiak mechanics at the compressor station to discuss responsibilities for various parts and equipment that are on or connected to the compressor units and timelines for repair and start-up. *Id.* ¶ 13. These allegations indicate that Pierce had a duty to maintain the job site in a reasonably safe condition and provide a reasonably safe work environment, and that he knew or should have known of the prior fire and that the line was leaking and posed a danger. That Kodiak is responsible for the gas compression unit does not necessarily absolve Pierce from the

duty to ensure that the site was safe from a gas leak or of notifying Kodiak of a risk. The Court cannot say on this record that Plaintiff has no possibility of prevailing on a negligence claim against Pierce.

The Court finds the case of *Lopez v. Spur Energy Partners, LLC*, No. CIV 22-09837 JB/LF, 2024 WL 5263705 (D.N.M. Dec. 31, 2024), cited by Plaintiff, analogous to the case at hand. In *Lopez*, the district court granted a motion to remand, rejecting the defendants' argument that it met the fraudulent joinder standard. *Id.* at *15. The decedents in that case were killed while cleaning a frac tank, work arising from a contract their employer had with one of the companies that owned the frac tank ("the defendant company"). *See* Ex. 2 at ¶¶ 31-49, Dkt. No. 36-1. There, as here, the defendant company argued the plaintiff could not maintain a viable claim against its employees who had been named as defendants and submitted affidavits in which the employees attested they were not present at the site, were not responsible for the operations at the site, and did not supervise or direct the work of the decedents. *See Lopez*, 2024 WL 5263705, at *16. As the district court explained, the affidavits setting out the employees' "lack of involvement with and supervision over the frac tanks do not rule out the possibility that the Plaintiffs could recover against the [employee defendants] pursuant to negligence theories grounded in the lack of supervision." *Id.*

As in *Lopez*, Defendants have not satisfied the exacting standard for proving fraudulent joinder. "A claim which can be dismissed only after an intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction." *Montano*, 2000 WL 525592, at *2 (quoting with approval *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 853 (3d Cir. 1992)). Based on the allegations of the amended complaint, there is a possibility that Plaintiff has stated a claim. Therefore, Defendants have not demonstrated that

the claim against Pierce cannot stand with complete certainty. The Court therefore grants Plaintiff's motion to remand.

**IT IS THEREFORE ORDERED** that

1. Plaintiff's *Motion for Leave to Amend Complaint* (**Dkt. No. 17**) is **GRANTED**.
2. Plaintiff's *Motion to Remand* (**Dkt. No. 18**) is **GRANTED**.
3. This case is **REMANDED** to the First Judicial District Court of Santa Fe County, New Mexico.

SENIOR UNITED STATES DISTRICT JUDGE